UNITED STATES ex rel. EDWARDS v. ROOT.      419

D. C.]                    Syllabus.

# UNITED STATES ex rel. EDWARDS v. ROOT, Secretary of War.

MANDAMUS; STATUTORY CONSTRUCTION; REORGANIZATION AND INCREASE OF
THE ARMY.

1. The act of Congress of February 2, 1901 (31 Stat. at L. 748, chap. 192,
   U. S. Comp. Stat. 1901, p. 784), providing for an increase and a re-
   organization of the Army of the United States, imposed upon the Pres-
   ident and Secretary of War many and complicated duties in carrying
   out its purposes, and it would require a very plain and unmistakable
   departure from its provisions to justify the judiciary in interposing
   by mandamus to control and reverse the action of the War Department
   in its work of reorganization.
2. The courts cannot substitute their own discretion and judgment for that
   of the Executive Department of the government in matters properly
   confided to it. Each department of the government must work in its
   own proper sphere and jurisdiction.
3. Although there might be some such question made as to the strict cor-
   rectness of the construction placed by the Secretary of War upon the
   act of Congress of February 2, 1901, providing for the reorganization
   and increase of the Army, yet the court cannot properly be asked to
   solve the doubt and control and reverse the action of the Secretary as
   against the construction that has been adopted and acted upon in the
   administration of the affairs of his department, and by which the
   rights of others may be affected.
4. An officer of the Army, who does not claim that he is entitled to any
   higher rank therein for the present, cannot be said to have been de-
   prived of any legal or vested right because he is deprived of a lineal
   or relative rank or position in the "Official Army Register" that might
   be a benefit to him in a future claim to promotion, as the mere desig-
   nation therein of an officer's relative rank does not fix and determine
   his rank in the Army and his right to promotion.
5. A petition by a lieutenant of the Army of the United States for the
   writ of mandamus against the Secretary of War, the Adjutant General,
   and other officers of the Army, in which it was claimed that the Sec-
   retary and the Adjutant General, by a violation of the act of Congress
   of February 2, 1901, providing for the reorganization and increase of
   the Army, had caused the other respondents, fellow officers of the
   petitioner, to rank above him, and to so reduce his rank ninety-one files

and thereby delay his promotion for many years, was *denied* on the grounds (1) that the action of the War Department in construing and carrying into effect the act of Congress in question called for the exercise of judgment and discretion, and not the doing of mere ministerial acts; and (2) that the petitioner had been deprived of no vested or legal right, his right, if any, being merely of a prospective nature which might never be available or realized.

No. 1317.   Submitted May 6, 1903.   Decided October 6, 1903.

HEARING on an appeal by the relator from an order of the supreme court of the District of Columbia dismissing a petition for the writ of mandamus against the Secretary of War, the Adjutant General, and certain officers of the United States Army.                                                *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an application for a writ of mandamus, on the relation of First Lieutenant Frank B. Edwards, of the artillery arm of the United States Army, against Elihu Root, Secretary of War; Henry C. Corbin, Adjutant General, United States Army; Alfred S. Morgan, and others, officers in the Army of the United States, supposed to be affected by the question sought to have decided. The object of the application is, by mandamus, to compel ·the Secretary of War and the Adjutant General to restore the ·petitioner to what he claims to be his lawful rank in the army; to make all orders necessary thereto, and to make all corrections in the records of the War Department, and in the "Official Army Register," relating to the petitioner's rank in the army. The Secretary of War and the Adjutant General filed a joint answer to the petition, to which the petitioner demurred. The demurrer was overruled by the court below, the writ of mandamus refused, and the petition dismissed. From that order the petitioner has appealed.

It appears from the allegations of the petition, and which are admitted by the answer, that the appellant was commissioned second lieutenant of infantry, United States Army, on the 25th day of July, 1900, and thereby became an officer in the Regular

Army. That afterwards, that is to say, on the 2d of February, 1901, the act of Congress was passed and approved, to increase the efficiency of the permanent military establishment of the United States (31 Stat. at L. 748, chap. 192, U. S. Comp. Stat. 1901, p. 784). That statute provides for an increase and a thorough reorganization of the Army, and is a statute of many and complicated provisions; and among the provisions that have application to the subject of the present cause are the following:

"Sec. 3. That the regimental organization of the artillery arm of the United States Army is hereby discontinued, and that arm is constituted and designated as the artillery corps. It shall be organized as hereinafter specified, and shall belong to the line of the Army."

"Sec. 5. That all officers of artillery shall be placed on one list, in respect to promotion, according to seniority in their several grades, and shall be assigned to coast or to field artillery according to their special aptitude for the respective services.

"Sec. 6. That the artillery corps shall consist of a chief of artillery, who shall be selected and detailed by the President from the colonels of artillery, to serve on the staff of the general officer commanding the Army, and whose duties shall be prescribed by the Secretary of War; fourteen colonels, one of whom shall be the chief of artillery; thirteen lieutenant-colonels, thirty-nine majors, one hundred and ninety-five captains, one hundred and ninety-five first lieutenants, one hundred and ninety-five second lieutenants; and the captains and lieutenants provided for in this section, not required for duty with batteries or companies, shall be available for duty as staff officers of the various artillery garrisons and such other details as may be authorized by law and regulations; twenty-one sergeants-major."

"Sec. 9. That the increase herein provided for the artillery shall be made as follows: Not less than 20 per centum before July 1, 1901, and not less than 20 per centum each succeeding twelve months until the total number provided for shall have been attained.

"All vacancies created or caused by this act shall be filled by promotion according to seniority in the artillery arm. Second

422 UNITED STATES ex rel. EDWARDS v. ROOT.

Statement of the Case. [22 App.

lieutenants of infantry or cavalry may, in the discretion of the President, be transferred to the artillery arm, taking rank therein according to date of commission, and such transfers shall be subject to approval by a board of artillery officers appointed to pass upon the capacity of such officers for artillery service: *Provided,* that the increase of officers of artillery shall be only in proportion to the increase of men."

"Sec. 28. That vacancies in the grade of field officers and captain, created by this act, in the cavalry, artillery, and infantry, shall be filled by promotion, according to seniority in each branch respectively. Vacancies existing after the promotions have been made shall be provided for as follows: A sufficient number shall be reserved in the grade of second lieutenant for the next graduating class of the United States Military Academy.

"Persons not over forty years of age who shall have at any time served as volunteers subsequent to April 21, 1898, may be ordered before boards of officers for such examination as may be prescribed by the Secretary of War, and those who establish their fitness before the examining boards may be appointed to the grades of first or second lieutenant in the Regular Army, taking rank in the respective grades according to seniority *as determined by length of prior commissioned service;* but no person appointed under the provisions of this section shall be placed above another *in the same grade with longer commissioned service,* and nothing herein contained shall change the relative rank of officers heretofore commissioned in the Regular Army. Enlisted men of the Regular Army or volunteers may be appointed second lieutenants in the Regular Army to vacancies created by this act, provided that they shall have served one year, under the same conditions now authorized by law for enlisted men of the Regular Army."

It also appears that, while holding the commission of second lieutenant of infantry, the appellant was, on March 19, 1901, in pursuance of the provisions of section 9 of the act of February 2, 1901, transferred to the artillery corps as a second lieutenant; and that, on July 1, 1901, in further pursuance of the said act, he was appointed a first lieutenant of artillery to fill a vacancy

UNITED STATES ex rel. EDWARDS v. ROOT.          423

D. C.]                    Statement of the Case.

caused by the increase of the artillery arm by the said act of 1901. It is alleged by the appellant that this latter appointment was by way of promotion to the grade of first lieutenant of artillery, and that it entitled him to lineal rank of 89, and the relative rank of 854, in the grade of first lieutenants.

It is then alleged, by paragraph 8 of the petition, that, in violation of the act of Congress of February 2, 1901, the Secretary of War, by and through the Adjutant General, caused the army officers named as defendants in the petition, who were or had been commissioned officers in the volunteer army, to rank above the appellant, who, at the date of the passage of the act of 1901, was, and from July 25, 1900, had been, an officer in the Regular Army; thereby reducing the appellant's lineal and relative rank ninety-one files. That, in determining the rank of all officers appointed, transferred, or promoted, under said act of 1901, the Secretary of War computed the length of prior commissioned service to February 2, 1901, irrespective of the amount of service actually rendered prior to the date of the issuance of the commissions. And the appellant has filed with his petition, as an exhibit, a list of the said volunteer officers so appointed to the Regular Army, with the dates of their respective commissions, and their respective ranks, to which they have been assigned, in the grade of first lieutenants in the Regular Army. These officers, however, though made defendants in the petition, do not appear to have answered.

It is alleged that, by reason of the supposed unlawful acts of the Secretary of War and of the Adjutant General, the rank of the appellant in the artillery arm of the service has been reduced ninety-one files, and that, unless he should be restored to his proper rank, his promotion to the grade of captain will be delayed for many years. He therefore prays that the Secretary of War and the Adjutant General may be compelled by mandamus to restore him to his lawful rank in the Army; to make all necessary orders to that end, and to make all corrections in the records of the War Department and in the "Official Army Register," relating to the appellant's rank.

The Secretary of War and the Adjutant General, by their

424       UNITED STATES ex rel. EDWARDS v. ROOT.

Statement of the Case.                    [22 App.

joint answer to the petition, while admitting many of the facts alleged, controvert the claim and pretension of the appellant, and deny the correctness of the construction of the act of February 2, 1901, upon which the claim of the appellant is based. They aver and contend that the said act of Congress provided at once a new classification and for a large increase in the artillery arm of the service, the execution of which was not provided for in detail, but, on the contrary, was confided largely to the President of the United States and to the Secretary of War acting under the authority of the President. That by reason of the increase in the number of officers as well as by the provisions for the appointment in that arm, not only of persons graduating from the United States Military Academy, but also of persons who had served as volunteers subsequent to April 21, 1898, and likewise of enlisted men of the Regular Army or volunteers who had served one year as also of civilians under the conditions then authorized by law; and likewise, for the transfer to the artillery arm of second lieutenants of infantry or cavalry, as well as by reason of the fact that a minimum but no maximum of time was provided for the accomplishment of such increase, a complicated administrative problem was presented to the President and Secretary of War in the execution of the law, and the adjustment of the various classes of appointees, both in respect of each other, and of the officers then in the service. And they therefore aver that the execution of the act for the reorganization and increase of the Army, in conjunction with the other acts governing the appointment, promotion, and increase of the line of the Army, was a matter involving the exercise of the discretion and judgment of the President of the United States, as the Chief Executive of the Nation, and the Commander-in-Chief of the Army, and of the Secretary of War acting by authority of the President. That it was left to the discretion and judgment of the President and Secretary to appoint to the artillery arm such second lieutenants of infantry and cavalry as, in the President's discretion, he might see fit, subject only to the approval of a board of artillery officers as to capacity for artillery service. And that the appointment of officers provided for by the act, and the

adjustment of their rank in accordance with the intent and purpose thereof, were committed to the judgment and discretion of the President and the Secretary of War.

The appellees deny the allegations contained in paragraph 8 of the appellant's petition; and, on the contrary, they aver that, pursuant to the said act of February 2, 1901, providing that persons who should have served as volunteers subsequent to April 21, 1898, might be appointed to the grades of first and second lieutenants, a number of such officers were designated for examination, and, after a careful search and investigation of the examination papers of those who established their fitness before the examining board, those showing the greatest aptitude in mathematics, and having the highest marks on examination, were selected, as far as possible, for the artillery. In consequence whereof the officers joined with the Secretary of War and the Adjutant General as defendants in the petition in this case were severally appointed to fill vacancies created by the increase of the artillery arm under the act of 1901. In accordance with the provision that the increase in officers be only in proportion to the increase of men, such officers were appointed, some on May 8, others on July 1, August 1, August 22, and September 23, 1901, the dates at which the increments of enlisted men had respectively been secured. That, inasmuch as the act required that such officers should take rank in accordance with seniority as determined by length of prior commissioned service, such officers so appointed as first lieutenants of artillery were not given rank merely in accordance with the dates of their respective commissions, which, by reason of the increments aforesaid, varied in dates; but, in pursuance of said act, notwithstanding the date of said commission, they were given rank according to seniority as determined by length of prior commissioned service. And although some of such officers named in the list filed with the petition, with less length of prior commissioned service, were appointed on August 1, nevertheless, neither of said officers was placed above any other officer in the same grade with longer commissioned service; but officers appointed later were, on the contrary, ranked above those earlier appointed, by reason of

greater length of prior commissioned service. The defendants believe and aver that the true intent and meaning of the term "prior commissioned service" is commissioned service prior to the approval of the said act, and that, in the exercise of their discretion in the premises, the said term was so construed by the President, and the Secretary of War acting under the President's authority.

That inasmuch as the intent, object, and purpose of the act of February 2, 1901, were to give recognition to the volunteer officers who had served and seen active field service, in accordance with the length of such service, and to rank them accordingly, it became and was necessary, in the execution of the act, to adopt a common date to which such prior services might be computed, which would not give to any such officer an advantage over his fellow officers by reason of the accident of time and place of the examination. That the officers who had seen the most arduous field service in the Philippines were designated to return and be mustered out in advance of those in the Philippines who had seen less active service, and, therefore, if the prior commissioned service should be computed to the actual date of the several appointments of the individual officers, those having less real service would have been preferred over those of greater service, and great and inextricable confusion would have resulted from a continual readjustment of the rank of such officers at the date of each new appointment. On the other hand, by the selection of a common date, to which all service might be computed, namely, the date of the passage of the act, the relative rank of all officers might be determined with simplicity and order, in accordance with their commissioned service within the meaning of the act.

Inasmuch as the act plainly contemplated that the increase of officers in the artillery arm, though made at such intervals as the President and Secretary of War might direct, within the limit of five years, as therein provided, should be considered as one increase in an entire body, rank in which should be determined by length of prior commissioned service, it became and was the duty of the Secretary of War to arrange said officers

in accordance with such intent, not by any supposed rule as to rank from date of commissions, but by the common criterion of prior commissioned service; for which reason all of the officers appointed as first lieutenants were given rank, not from the date of their commissions, but according to commissioned service computed from the date of the passage of the act of Congress. And the appellees aver and contend that no officer so appointed was given rank above the appellant, who did not have greater length of commissioned service than the appellant, prior to the date of the said act of 1901, and that it was not the duty of the appellees to assign rank to the appellant in violation of the spirit and intention of the act, according to the supposed rule requiring rank to be assigned according to the date of appointment or commission. On the contrary, they aver that there is no statute, act of Congress, or law of any kind, requiring that rank shall be according to date of commission; and that, if such act or law existed, it is wholly superseded, in respect of these appointments, by the act of February 2, 1901; and had there been no question before the President and Secretary of War, involving an exercise of discretion, and had it only been necessary for them to determine the rank of the several appointees under the act, whose dates of appointment or commission were the same, then section 1219 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 858), would have fully applied to the case, and there would have been no occasion to prescribe in the act a rule for determining the relative rank of appointees having prior commissioned service; but such a rule is prescribed in section 28 of the act of February 2, 1901, which is more extensive in its scope than the rule set forth in section 1219 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 858), and which applies and was intended to apply to the increase of the artillery corps by increments, and to determine the relative rank of all appointees thereunder who had prior commissioned service.

The appellees deny that by reason of the acts complained of the appellant's rank in the artillery arm has been reduced ninety-one files, or any other number of files, or that his promotion to the grade of captain will be delayed for any period whatever;

but, on the contrary, they aver that his present rank in the artillery arm is his true rank as determined by the provisions of the act of February 2, 1901, and that the officers ranking above him, and of whom he complains, rank above him by reason of seniority as determined by length of prior commissioned service.

They therefore submit that the appellant has no right, such as he claims, and consequently no remedy by mandamus or otherwise, to review, reverse, or set aside or control the action of the Secretary of War in the execution of the act of February 2, 1901, determining the appointment, promotion, and relative rank of officers in the Army of the United States; but, on the contrary, that the appointment and promotion of such officers, and their ranking in their several grades in the lineal list of artillery officers, and of the relative rank in the list of officers of the Army, are matters wholly within the competence of the President of the United States, and the Secretary of War, acting by authority of the President, and of the law in that behalf; and are matters within the cognizance of the Executive Department of the government, and therefore not within the jurisdiction of the court.

The appellant demurred to the answer, and thereby admitted as true all matters of fact well pleaded; and the question is thus raised, whether the facts set forth in the pleading present to the court any sufficient ground for redress of the supposed wrong alleged.

*Messrs. Catherine & Craig* and *Mr. Wm. E. Ambrose* for the appellant.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

We have stated fully the pleadings in the case as they contain the facts upon which the supposed right is based; and we have thus stated the facts fully that it may clearly appear what

is the nature of the supposed wrong of which complaint is made, and the ground upon which relief is prayed. We have also stated fully the provisions of the act of Congress of February 2, 1901, under which the claim is made, and the construction thereof by which the action of the Secretary of War and the Adjutant General was determined.

The act of Congress of February 2, 1901, imposed upon the President and the War Department many and complicated duties in effecting the increase and reorganization of the army. In executing the various provisions of the act many perplexing questions necessarily arose, and which required for their determination, not only discretion, but the exercise of a careful and discriminating judgment. It must be borne in mind that they were required by this act, without special and detailed provisions to meet every emergency that might arise, to reorganize and systematize the entire body of the army, taking in the large increase provided for, both of officers and men; and to do that with justice and fairness to all concerned was a work of no small proportions and difficulty, and plainly required the exercise of judgment and discretion in a large and important sense. In such state of case it would require a very plain and unmistakable departure from the provisions of the statute to justify the judiciary in interposing by mandamus to control and reverse the action of the department in its work of reorganization, and fixing the rank of the officers of the Army. To interpose in any such case would almost certainly be productive of mischief and confusion in the entire organization. It is a well-settled principle in our jurisprudence and polity of government that the courts cannot substitute their own discretion and judgment for that of the Executive Department of the government in matters properly confided to it. Each department of government must work in its own proper sphere and jurisdiction.

In the case of *Decatur* v. *Paulding,* 14 Pet. 497, 10 L. ed. 559, it was held by the Supreme Court of the United States, and repeated in the recent case of *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 47 L. ed. 1074, 23 Sup. Ct. Rep. 698, that, in general, the official duties of the head of one of

**430** UNITED STATES ex rel. EDWARDS *v.* ROOT.

Opinion of the Court. [22 App.

the Executive Departments, whether imposed by act of Congress or by resolution, are not mere ministerial duties. The head of an Executive Department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress under which he is from time to time required to act. And that was manifestly the condition of affairs under which the head of the War Department was required to act in respect to the matter of the present application.

It may be conceded, indeed it is doubtless true, that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance, and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases, the writ of mandamus and injunction are somewhat correlative to each other. *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541, 23 L. ed. 623, 628. But there is no such case presented here.

The act of 1901, for the reorganization and increase of the Army, has been construed, and that construction acted upon, by the head of the War Department in a manner that concerns a large class of officers; and, though there might be some such question made as would suggest doubt as to the strict correctness of the construction adopted, yet the court cannot be asked to solve the doubt, and thus to control and reverse the action of the department, as against the construction that has been adopted and acted upon in the administration of the affairs of the department, and by which the rights of others may affected. The principle upon this subject is well settled. It is declared by the Supreme Court of the United States, in *United States* v. *Moore,* 95 U. S. 760, 763, 24 L. ed. 588, 589, that "the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought

D. C.]                    Opinion of the Court.

not be overruled without cogent reasons. *Edwards* v. *Darby,* 12 Wheat. 210, 6 L. ed. 604; *United States* v. *State Bank,* 6 Pet. 29, 8 L. ed. 308; *United States* v. *Macdaniel,* 7 Pet. 7, 8 L. ed. 589. The officers concerned are usually able men, and masters of the subject. Not unfrequently they are the draftsmen of the laws they are afterwards called upon to interpret."

With respect to the interpretation given the act of 1901, by the Secretary of War, and those acting under his direction, as set forth in the answer of the appellees, this court is not at all inclined to dissent from it, or to say that such construction was improper. That construction certainly tended to produce simplicity, as well as justice among those officers entitled to rank in the same grade with the appellant. The fixing of a common date up to which the prior commissioned service should be computed would seem to be essential in order to maintain order and simplicity, as well as justice, in ranking the officers under that provision of the act.

But apart from the mere construction of the act, the appellant in his application has failed to show any real ground for the relief that he seeks. He is not at present deprived of any right that he can appeal to a court of justice to enforce. He occupies and enjoys the position of first lieutenant in the artillery corps of the Army, and he does not claim that he is entitled to any higher rank therein for the present; he only claims that he is deprived of a rank or position in the Official Army Register that might be of benefit to him in a future claim to promotion to the rank of captain. But his rank as shown by the Official Army Register is conclusive of no such right of promotion. The mere designation of lineal or relative rank in the Official Army Register does not fix and determine his rank in the Army and his right to promotion. That right depends upon other conditions. It is true the Official Army Register is an official record of the War Department, that furnishes evidence of the rank and status of officers in the various grades and classes of the officers in the army organization; but it does not *per se* establish and determine any right to particular rank, much less to promotion. This latter right depends upon quite different conditions, and apart from

the evidence furnished by the Official Army Register. Promotion is in a certain sense a new appointment, and, to the position of captain, can only be effected by the nomination of the President, with the advice and consent of the Senate. The mere entry, therefore, in the Official Army Register of the name and rank of the appellant would not operate to entitle him to or to control such promotion. That must rest primarily in the judgment and discretion of the President.

The right claimed by the appellant is of a prospective nature, and which may never be available or realized. And, such being the nature of the right claimed, it has been held that the relative rank of officers in the Army and Navy does not constitute a vested right, nor a matter of contract, but is subject to regulation by legislation of Congress and to the action of the Executive Departments, within the scope of their discretion. *United States ex rel. Hall* v. *Whitney,* 5 Mackey, 370.

Without pursuing the subject further, we are clearly of opinion that there is no case presented on the facts as set forth in the pleading, to warrant the granting of a mandamus; and that the court below was right in overruling the demurrer to the answer and dismissing the petition. The order appealed from must, therefore, be affirmed; and it is so ordered, with costs.

· *Order affirmed.*