**CONGRESS CIGAR CO., Inc., v. HERING.**

**No. 4740.**

Circuit Court of Appeals, Third Circuit.

Sept. 2, 1932.

Henry L. Schimpf, Jr., of Philadelphia, Pa., Ivan Culbertson, of Wilmington, Del., and Carr & Krauss, of Philadelphia, Pa., for appellant.

Leonard E. Wales, U. S. Atty., of Wilmington, Del. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

For several years prior to 1925 the Congress Cigar Company, a Pennsylvania corporation (hereafter styled Pennsylvania), operated several cigar factories, one of which was located in Delaware.

On January 14, 1926, the Congress Cigar Company, Inc. (hereafter called Delaware), was incorporated by the state of Delaware. This was done by virtue of an arrangement made by Samuel and Jacob Paley, who owned twelve of the fourteen thousand shares of Pennsylvania, with a promotion firm of New York bankers, whereby it was agreed Pennsylvania should transfer its entire business to Delaware, and in consideration thereof the Paleys and their fellow stockholders in Pennsylvania should receive for their stock therein four-fifths of the stock of Delaware and sell the other fifth to the promoters for $2,450,000. The arrangement was carried out, and in pursuance thereof, on January 25, 1926, Delaware took over Pennsylvania's Wilmington plant, and thereafter carried on the business of manufacturing cigars. Thereupon the government required Delaware to pay the excise tax imposed on cigar manufacturers. Having paid such tax under protest, Delaware brought this suit in the court below to recover such tax as being unlawfully imposed. On trial that court held the tax was lawfully imposed. Whereupon Delaware took this appeal.

After due consideration, we find no error was committed. That Delaware was carrying on the business of a cigar manufacturer cannot be gainsaid, and that as such it was a proper subject for the imposition of the tax is equally certain. Such being the case, how is it to be relieved from taxation? In that regard Delaware claims it is simply carrying on the cigar making for which Pennsylvania had paid a like tax, and that, when Pennsylvania ceased making cigars in the Wilmington factory, and Delaware began and continued cigar making, the tax payment by Pennsylvania inured to the benefit of Delaware. But the answer to this is that, however equitable such a contention is, the tax laws have not made any such provision, and therefore courts have no power to so decree. In that regard the court below [50 F. (2d) 244] held:

"The vital question for determination, therefore, is whether or not under the facts of this case the plaintiff, the Delaware corporation, and Congress Cigar Company, the Pennsylvania corporation, are to be considered and treated not only as separate legal, but as separate taxable, entities.

"In rejecting the claim of the plaintiff for

a refund of the tax paid, the Commissioner stated:

" 'This office has held that when a corporation organized under the laws of one state, engaged in the manufacture of cigars, incorporates under the laws of another state, a separate legal entity is created under the laws of the other state, and the new corporation is deemed to have commenced business when it began operating under the new charter. This view is in harmony with the established practice of the Department.'

"The Commissioner relied on an opinion given to the Commissioner of Internal Revenue by the then Solicitor of Internal Revenue, October 15, 1919, on facts almost identical with those in this case, construing section 408 of the Revenue Act of 1916 in terms similar to section 702 of the [Revenue] Act of 1924 [26 USCA § 212 note] (Law Opinion No. 935), and the fact that the construction of the statute as set out in that opinion had been consistently applied by the Treasury Department since 1919. The defendant (citing Grand Rapids & I. Ry. Co. v. Doyle [D. C.] 245 F. 792, 796) urges that this decision is but a rule promulgated for the guidance of the Collector, and although entitled to some consideration, it is not entitled to great weight. It is equally true, however, as stated by the Supreme Court in United States v. Moore, 95 U. S. 760, 763 [24 L. Ed. 588], that 'The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons.' This is particularly so in cases where the construction has been uniformly adhered to for several years, and Congress has re-enacted the law many times in substantially the same language. * * *

"The capital structures of the old and new corporations were entirely different. The authorized capital of the Pennsylvania corporation was 20,000 shares of the par value of $100 each, with 14,000 shares issued and outstanding. The authorized capital of the new Delaware corporation was 350,000 shares of the par value of $4 per share, changed twelve days after its incorporation to 350,000 shares of no par value. The old corporation had nine stockholders. The new corporation shortly after the reorganization had several hundred stockholders. The Delaware charter imposed a different measure of responsibility to the public, different rights between different stockholders and the company, and between stockholders inter sese. In Marr v. United States, 268 U. S. 536 [45 S. Ct. 575, 69 L. Ed. 1079], a new corporation organized to continue the business of the old was created under the laws of another state, with a different capital structure, and with different rights and powers. The court said: 'In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as when organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new.' "

Without further discussion, we limit ourselves to saying that this reasoning commends itself to us and justifies our affirmance of the judgment below.